IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER J. PALKA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 07 C 5211 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| CITY OF CHICAGO and MATTHEW TOBIAS, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Peter J. Palka sues his former employer, the City of Chicago ("the city") and Matthew Tobias, Assistant Deputy Superintendent of the Chicago Police Department's ("CPD") education and training division, alleging a violation of 42 U.S.C. § 1983. Palka claims the CPD fired him because he is Polish. The city and Tobias jointly move for summary judgment. For the reasons set forth below, the motion is granted in part.

## BACKGROUND

### I.     Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The rule requires both the moving and non-moving party to submit a statement of material facts consisting of short, numbered paragraphs supported by specific evidentiary references. Local Rule 56.1(a)(3); Local Rule 56.1(b)(3). Evidence submitted at summary judgment must be admissible at trial under the Federal Rules of Evidence. *See Woods v.*

1

*City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). All facts not properly supported by the record evidence must be disregarded. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

Palka disregards these rules. The most egregious violation is his reliance on inadmissible character evidence in his statement of additional facts. He cites prior § 1983 lawsuits against Tobias. Pl. Facts ¶¶ 31-34. He relies upon write-ups against Tobias for excessive force, swearing, performing an unlawful search, stealing money from a suspect, calling a female officer "a bitch or something like that," and sexual harassment. Pl. Facts ¶¶ 22-26, 28. He cites a female police officer's accusation Tobias fired her because she is African American, a claim Tobias applied the training "power test" in a manner that discriminated against women, and his improper prohibition of braids in African American probationary police officers' hair. Pl. Facts ¶¶ 5, 7, 27. Palka cites Tobias's termination of an African American probationary police officer for having an unauthorized bullet in his gun and of an Asian probationary police officer for repeated tardiness. Pl. Facts ¶¶ 9-10. These purported prior bad acts are inadmissible under Federal Rule of Evidence 404(b).

Palka also engages in improper factual characterizations and legal argument. *See, e.g.*, P. Facts ¶¶ 3, 6, 12, 13, 35; Pl. Resp. Facts ¶ 50. His response to defendants' statement of material facts fails to provide a summary of the paragraph to which it is directed in violation of Local Rule 56.1(b)(3)(A). He admits some of defendants' facts, but improperly includes additional factual assertions. Pl. Resp. Facts ¶¶ 10-17, 62.

Palka's statement of additional facts is considered only to the extent it complies with Rule 56.1's requirements.

## II. Background

This case arises out of the termination of Palka's four and a half-month employment as a probationary police officer. The city asserts Palka's termination was for failing to follow CPD rules and regulations. Palka claims he was fired based on his national origin (Polish).[1] The following facts are from the statements and exhibits submitted by the parties pursuant to Local Rule 56.1 and are undisputed unless otherwise noted.

Palka was a probationary police officer from September 25, 2006 to February 1, 2007. Defs. Facts ¶ 3. In one of the training courses, instructors yell at and make derogatory statements to trainees. The trainees do not know they are being tested; the point is to evaluate their reactions. Defs. Facts ¶ 18-19. Defendants claim Palka, after participating in the course on October 30, 2006, warned a probationary police officer who had not yet participated about the drill's content. Defs. Facts ¶¶ 20-21. At the direction of Lieutenant Ronald Pontecore, Palka wrote a memorandum to Tobias stating he would not do this again. Defs. Ex. J. Palka asserts he merely told another probationary police officer to "behave." Pl. Facts ¶ 21.

Palka's training continued. He had trouble with firearms training. On January 19, 2007 and January 24, 2007, he received counseling session reports from Sergeant Steven Sesso, who was in charge of firearms training. Sesso reported that Palka failed to pass the mandatory firearms course on his first and second attempts and provided Palka an opportunity for additional training. Defs. Facts ¶¶ 24-25, 27. Palka disputes he failed the firearms course. Pl. Facts ¶ 24-25, 27. He claims

---

[1] Palka's complaint alleges he was fired based on his national origin (Polish), race (Caucasian), and gender (male). In his memorandum in opposition to the summary judgment motion, he abandons his race and gender claims.

3

his firearms instructor recorded failing grades, but the test report reflects passing scores. Pl. Facts ¶ 24.

On January 25, 2007, during additional firearms training, Palka admitted to instructor Dora Hindman that he had not read the firearms manual. Defs. Facts ¶¶ 27-28. Palka's instuctors previously told him he must read and understand the content of all documents received in training. Def. Facts ¶ 35. Later that morning, instructors Hindman and Bob Oakes met with Tobias to discuss his poor preparation and lack of fundamental firearms skills, and his failure to read the firearms manual. Defs. Facts ¶ 29. Hindman and Oakes prepared a memorandum of the conversation. Defs. Facts ¶ 30.

Two hours later, Tobias summoned Palka to his office. Part of their conversation is disputed. According to Palka, Tobias "started like screaming" and asked Palka whether he had read the firearms manual; Palka responded he had not. Palka Dep. Tr. 124:9-15. Tobias asked Palka his nationality, and Palka responded he was Polish. Palka Dep. Tr. 124:17-19; 125:14-15. Tobias commented that: "You look terrible, and we don't need people like you." Palka Dep. Tr. 125:19-21. Tobias told Palka to handwrite the firearms manual and to "[g]et the hell out of my office." Palka Dep. Tr. 125:22; 126:1, 2-5. Tobias denies asking Palka about his nationality and asserts his comment regarding Palka's appearance was directed at his disheveled uniform. Tobias Dep. Tr. 33:1-2; 33:3-7; 57:18-22. After his meeting with Tobias, Palka received a counseling session report from Lieutenant Pontecore for disobeying Tobias's direct order to read the firearms manual. Palka was placed in additional training for failing the firearms qualification test. Defs. Facts ¶¶ 37-38; Defs. Ex. O.

In a January 25, 2007 memorandum from Palka's home room instructor Gary Lorden to Tobias, Lorden wrote that Palka advised him he read the firearms manual two or three months earlier, but he told his instructors and Tobias he had not "because I was nervous and it seemed like the easiest answer." Defs. Ex. P. Palka denies he gave this reason to Loren. Palka Dep. Tr. 133:2-38. According to Palka, he told his instructors and Tobias he had not read the firearms manual because he thought they were asking him whether he had read it the night before the training session. Palka Dep. Tr. 133:18-20.

In a January 25, 2007 memorandum from Lieutenant Pontecore to Tobias, Lieutenant Pontecore suggested Palka's termination because of his lack of fundamental firearms skills, his failure to read the firearms manual despite his understanding he was under order to do so, and his improper disclosure of information regarding the training class to another probationary police officer. Defs. Ex. Q.

In a January 29, 2007 memorandum from Tobias to Bradford Woods, the CPD's personnel division commander, Tobias requested Palka's termination because his reported actions violated the CPD rules and regulations prohibiting lying, evasiveness, and deceit, failing to perform any duty, and disobeying an order or directive. Def. Facts ¶¶ 15-17; Defs. Ex. R. Tobias testified he does not have authority to fire a probationary police officer, but he also admitted he fired Palka. Tobias Dep. Tr. 42:23-43:2; 43:23-44:14. In a January 30, 2007 letter, Woods informed Palka he was fired effective February 1, 2008 for violating CPD rules and regulations. Defs. Ex. S.

On January 31, 2007, Palka claims that another probationary police officer, Wojociech Czarniecki, had a similar conversation with Tobias. Czarniecki testified Tobias asked him questions regarding his nationality and stated, "we don't need people like you," after Czarniecki responded that

5

he is Polish. Czarniecki Dep. Tr. 189:8-24; 190:1-15. Czarniecki was fired effective February 7, 2007. Pl. Facts ¶ 35.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party has the initial burden of demonstrating that it is entitled to summary judgment." *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Section 1983 Claim Against Tobias

Palka claims Tobias discriminated against him on the basis of his national origin in violation of the equal protection clause of the fourteenth amendment and § 1983 by firing him because he is Polish. Defendants argue Palka fails to meet his burden of establishing discrimination. To recover under § 1983, a plaintiff must establish he was deprived of his

6

constitutional rights by an individual acting under the color of state law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000). This includes unequal treatment on the basis of national origin. *Salas v. Wis. Dep't of Corrections*, 493 F.3d 913, 926 (7th Cir. 2007). The same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims. *Id.* Palka may satisfy his burden of establishing discrimination in one of two ways: the direct method or the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Direct evidence is evidence which, if believed by the trier of fact, proves the particular fact in question without reliance upon inference or presumption. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2008). Direct evidence generally involves an admission or statement by the decisionmaker regarding his discriminatory intent. *Id.* Evidence an employer stated he was discharging an employee because of his national origin constitutes direct evidence. *See id.* This is the most obvious example. But direct evidence of discrimination does not require "a virtual admission of illegality." *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997). A supervisor's statement to a pregnant woman that she is being fired so she could spend more time at home with her children is direct evidence of pregnancy discrimination. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044-45 (7th Cir. 1999). A school superintendent's letter to an employee informing her she is being fired for excessive absenteeism is direct evidence of FMLA discrimination. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008). A police chief's description of the police station as "God's house" and warning to a dispatcher she would lose her job if she did not choose "God's way" over "Satan's way" is direct evidence the dispatcher was terminated based on religion. *Venters*, 123 F.3d at 973-74.

Palka proceeds under both the direct and indirect methods. Viewing the evidence in the light most favorable to Palka, Tobias made statements about Palka's national origin that are direct evidence of his discriminatory intent. Palka Dep. Tr. 124:17-19; 125:14-15, 19-21. Tobias asked Palka his nationality and when Palka responded Polish, Tobias told him the CPD does not need people like him. Four days later, Tobias recommended Palka's termination. Tobias's comments are evidence of his motivation to fire Palka because he is Polish. Within a week, Tobias purportedly made a similar statement to another Polish probationary police officer, who was terminated within days. Tobias disputes these statements. Issues of credibility cannot be resolved at the summary judgment stage. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

Tobias also argues he did not have authority to fire a probationary police officer. He stated this in his deposition, yet he also testified he fired Palka. Tobias Dep. Tr. 42:23-43:2; 43:23-44:14. Defendants cite the city's municipal code, which provides that only the CPD superintendent has authority to fire a probationary police officer. Chicago Municipal Code § 2-84-050. Regardless of whether Tobias had authority to fire Palka, there is evidence that Tobias recommended Palka's termination and, two days later, the CPD accepted the recommendation and fired Palka. Def. Facts ¶¶ 15-17; Defs. Exs. R and S. A reasonable inference may be drawn that his recommendation to terminate Palka influenced the superintendent. Comments establishing evidence of discriminatory intent need not be made by the decisionmaker. *Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 829 (7th Cir. 2008). It is sufficient if a person who influences the decisionmaker makes the comments. *Id.* Accordingly, Tobias's statement that the CPD does not need people like Palka and his recommendation to fire Palka after learning he is

Polish are sufficient direct evidence of Tobias's discriminatory intent to survive summary judgment.

Palka satisfies his burden under the direct evidence method with respect to his § 1983 claim against Tobias. The court need not consider whether he has satisfied the *McDonnell Douglas* requirements for establishing a *prima facie* case under the indirect method.

### III. Qualified Immunity

Tobias asserts he is entitled to qualified immunity because he exercised his discretion to recommend Palka's discharge based upon the reports of Palka's lieutenant and instructors, none of whom are alleged to have discriminated against Palka. Tobias argues he learned Palka lacked fundamental firearms skills, failed to read the firearms manual despite his understanding he was under order to do so, and improperly disclosed information regarding the training class to a probationary police officer. According to Tobias, Palka's termination had nothing to do with his national origin and was based on Palka's failure to follow CPD rules and regulations.

Government actors performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established rights. *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007). If Tobias fired Palka because of his performance and disciplinary issues, he may assert qualified immunity. But the basis for Palka's termination is a disputed issue of material fact. Summary judgment on the issue of qualified immunity is not appropriate under these circumstances. *See Nanda v. Bd. of Trs. of Univ. of Ill.*, No. 00 C 4757, 2004 WL 432472, at *22 (N.D. Ill. Feb. 18, 2004) (denying defendant summary judgment on qualified immunity claim because genuine issues of material fact precluded summary judgment on plaintiff's § 1983 employment discrimination claim); *King v. Vill. of Gilberts*, No. 01 C 1901,

2002 WL 1559629, at *5 (N.D. Ill. July 16, 2002) (same). Palka presents direct evidence Tobias fired him based on his national origin. Palka Dep. Tr. 124:17-19; 125:14-15, 19-21. If, as Palka claims, Tobias fired Palka because he is Polish, Tobias cannot claim qualified immunity. Firing a person based on his national origin is objectively unreasonable because it violates a panoply of laws. *See, e.g.*, 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); Illinois Human Rights Act, 775 ILCS 5/1-102, 5/2-102; Municipal Code of Chicago § 2-160-030.

Tobias is the Assistant Deputy Superintendent of the CPD's education and training division. He is charged with knowledge of laws pertaining to impermissible employment discrimination. *See McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004) (state actors are on notice of established law). Tobias cannot and does not contend the governing law concerning national origin discrimination is unsettled. Summary judgment on Tobias's claim of qualified immunity is inappropriate because there are genuine issues of material fact concerning the reason for Palka's termination.

## IV. Section 1983 Claim Against the City

Palka argues the city is liable for Tobias's alleged unlawful termination. He contends Tobias has a history of discriminating against minorities, but the City failed to stop him, and Tobias has final policymaking authority. A municipal government cannot be liable under § 1983 for its employees' constitutional torts unless the deprivation of a constitutional right is caused by municipal policy or custom. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The policy or custom must be a "moving force" behind a constitutional violation. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997).

10

To prevail on a *Monell* claim, a plaintiff must establish a violation of his constitutional rights, the existence of a municipal policy or custom, and a direct causal link between the policy or custom and his injury. *Id.* at 403-04. Palka must produce evidence of an express policy that, when enforced, causes a constitutional deprivation; a widespread practice that is so permanent and well settled so as to constitute a custom with the force of law; or the act of a person with final policymaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The standards for proving culpability and causation in this context are rigorous to ensure a municipality is not simply subjected to *respondeat superior* liability. *Board of County Comm'rs*, 520 U.S. at 405.

### A. Municipal Custom

Palka alleges in his complaint the CPD has a pattern of favoring Hispanic, non-white males over other ethnicities, races, and colors. Compl. ¶ 35. He abandons this theory in his opposition to summary judgment and summarily argues the city has approved Tobias's termination decisions, Tobias has a pattern of discriminating generally against minority probationary police officers, and the city has done nothing to stop him. According to Palka, under *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008), the city's inaction in response to Tobias's alleged pattern of discrimination against minorities supports municipal liability. Under *Arendale*, municipal liability for an employee's constitutional tort may be shown by the existence of a clear and persistent pattern of discrimination by a municipal employee; the city's notice or constructive notice; the city's tacit approval of the unconstitutional conduct such that its deliberate indifference in its failure to act amounts to an official policy of inaction; and that the

city's custom was the "moving force" or direct causal link in the constitutional deprivation. 519 F.3d at 599-600.

*Arendale* is not binding on the issue of municipal liability. *See, e.g., Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir. 1990) (a municipality's inaction in response to an employee's misconduct establishes liability only where the injury is caused by "faults 'systematic in nature'") (citations omitted); *Jones v. City of Chicago*, 787 F.2d 200, 205 (7th Cir. 1986) (city's failure to implement policy requiring a chaperone during gynecological examinations after patient's allegation of sexual assault against health clinic physician did not render city liable to patient who subsequently made same allegation against the physician).

The crux of Palka's argument is Tobias's alleged pattern of discriminating against minority probationary police officers. But he has not produced any admissible evidence to support this theory. He asserts Tobias has fired an inordinate number of female, African American, and other minority probationary police officers. Pl. Facts ¶ 1. In sum, based on information probationary police officers reported on their personnel forms, the following is the ethnic, national origin, and gender statistical breakdown of fifty-one probationary police officers Tobias has terminated (some probationary police officers classified themselves in more than one category): Caucasian (11); African American (14); female (16); Asian (3); foreign born (7); Hispanic (14); Middle Eastern (1). Pl. Facts ¶ 1. According to Palka, this shows a statistical imbalance among the identified groups. This statistics lack the necessary context for a meaningful comparison. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (analyzing statistics submitted under direct evidence method of proving employment discrimination); *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 616-17 (7th Cir. 2000) (same).

Palka neither describes the pool from which he draws the fifty-one probationary police officers nor provides the racial breakdown of the pool. The list does not include the basis for the terminations and fails to account for any nondiscriminatory explanations for the terminations. Nor is the list probative of discrimination.

This leaves Palka's and Czarniecki's terminations as the two instances of Tobias's purported improper termination of probationary police officers based upon national origin. These two situations do not show a pattern of discrimination. By virtue of the requirement that a municipal custom be so widespread and entrenched as to constitute the force of law, a custom generally cannot be established through a few acts of a municipal employee. *See, e.g., City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (one unconstitutional act insufficient to establish policy); *Estate of Christopher Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (three unconstitutional acts insufficient to establish policy); *Beal v. City of Chicago*, 04 C 2039, 2007 WL 1029364, at *13 (N.D. Ill. Mar. 30, 2007) (unconstitutional acts occurring on the same day insufficient to establish policy). Palka fails to demonstrate a genuine issue of material fact that the CPD has a custom or practice that resulted in a violation of his constitutional rights.

### B. Municipal Policymaker

Unlike the actions of a municipality's low-level employee, the single act of policymaker may render a local government liable under § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986) (plurality). *Monell's* policymaker prong is not a simple determination of whether a person with policymaking authority caused a constitutional deprivation. *Auriemma v. Rice*, 957 F.2d at 400-401. It requires both a person with policymaking authority and an official action that implements or creates official policy (that violated the plaintiff's constitutional

rights). *Id.* In *Auriemma*, a new CPD superintendent reshuffled the senior ranks of the CPD, promoting thirteen African Americans, nine Caucasian, and three Hispanics, while demoting twenty-five Caucasian, one Hispanic, and no African Americans. *Id.* at 398. Some of the demoted officers sued the superintendent and the city under § 1983, alleging their demotions were based on race and political affiliation. *Id.* The court held there was no basis for municipal liability. *Id.* at 400-01. The superintendent's authority to make personnel decisions did not render him a policymaker. *Id.* at 401. Whether an official has policymaking authority over a specific issue is a question answered by state or local law. *Id.* The superintendent was not a policymaker because his authority is subject to Illinois laws, city ordinances, and the police board's rules and regulations. *Id.* (citing then Municipal Code of Chicago § 11-5). Moreover, the superintendent allegedly violated these rules. *Id.* at 400-01 (citing then Municipal Code of Chicago §§ 25.1-8, 25.1-9, which apply to the CPD and ban racial and political discrimination). In doing so, he did not implement new policy; rather, he contradicted existing policy. *Id.* at 401.

Palka's municipal policymaker claim fails for similar reasons. Palka fails to provide any basis to conclude that Tobias, an assistant CPD superintendent, is a policymaker. There is no evidence the city council or police board delegated final policymaking authority to Tobias. Palka argues the city has the burden to make a clear showing as a matter of state and local law that Tobias was not a policymaker. *Yeksigian v. Nappi*, 900 F.3d 101, 104-05 (7th Cir. 1990). The court in *Yeksigian* addressed the defendant's burden on a motion to dismiss, not the plaintiff's burden to provide evidence of a genuine issue of material fact to preclude summary judgment.

Palka conflates policymaking authority with authority to make personnel decisions. Even if Tobias had authority to terminate Palka, this does not equate to policymaking authority. The

14

record, taken in the light most favorable to Palka, shows Tobias had authority to terminate probationary police officers. The record does not raise an issue of material fact that Tobias had authority to make binding policy for the city.

Without any legal analysis or factual support, Palka claims the policymaking prong may be established if the city approves a decision or policy made by a non-policymaker. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A plaintiff seeking to establish a § 1983 claim against a municipality based on a ratification theory must show a municipal official with final policymaking authority approved the subordinate's decision and the basis for it. *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998). This cannot be established by simply claiming the municipality failed to investigate or acquiesced in a subordinate's discretionary decision. *City of St. Louis*, 485 U.S. at 130; *Baskin*, 138 F.3d at 705. In viewing the evidence in the light most favorable to Palka, this is all Palka has shown.

Palka improperly assumes any decision by a person with policymaking authority is automatically "policy." For policymaking liability to apply, the policymaker's act must implement or create policy, not violate it. *Auriemma*, 957 F.2d at 400-401. Tobias's conduct is governed by the city's prohibition against national origin discrimination. Municipal Code of Chicago § 2-160-030; Defs. Facts ¶¶ 14, 62. If, as Palka argues, Tobias fired him because he is Polish, Tobias violated the city's policy against national origin discrimination.

## CONCLUSION

The motion for summary judgment is granted on the § 1983 claim against the city because Palka fails to demonstrate a genuine issue of material fact that the CPD has a custom or policy that resulted in a violation of his constitutional rights or that Tobias is a municipal

15

policymaker. The motion is denied on the § 1983 claim against Tobias because Palka provides evidence of discrimination under the direct method of proof. The motion is denied on Tobias's qualified immunity claim because genuine issues of material fact are raised concerning the reason for Palka's termination.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

August 20, 2008